IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BELINDA CHAPMAN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Case No. 3:20-cv-1975 |
| | § | |
| IOVATE HEALTH SCIENCES USA, INC., | § | |
| IOVATE HEALTH SCIENCES, INC., and | § | |
| MUSCLE TECH RESEARCH AND | § | |
| DEVELOPMENT, INC. | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, BELINDA CHAPMAN, (hereinafter referred to as "Plaintiff"), and respectfully file this First Amended Complaint against IOVATE HEALTH SCIENCES USA, INC., IOVATE HEALTH SCIENCES, INC., and MUSCLE TECH RESEARCH AND DEVELOPMENT, INC.. (hereinafter referred to as "Defendants"), and in support hereof would state and show the following:

### I. Parties

1.  **Plaintiff BELINDA CHAPMAN** is a citizen of and resides in Royse City, Rockwall County, Texas.

2.  **Defendant IOVATE HEALTH SCIENCES USA, INC ("Iovate USA")** is a foreign corporation organized and existing according to the laws of the State of New York, but doing business in the State of Texas at all times material

hereto. Service of process upon this may be done by serving its CEO Tim Toll at it principal place of business 3880 Jeffrey Blvd, Buffalo, NY 14219-2333.

3. IOVATE HEALTH SCIENCES USA, INC is one of the most successful and leading direct marketing companies in the world selling and marketing directly to the consumer via Walgreens, Walmart, Target, and Amazon just to name a few. This marketing includes consumers throughout the U.S., including directly to Texas customers. Consumers can purchased orders from IOVATE HEALTH SCIENCES USA, INC. which go directly to the consumer, including in Texas.

4. IOVATE HEALTH SCIENCES USA, INC. has thousands if not hundreds of thousands of consumers in Texas.

5. Advertising and marketing materials are targeted to Texas residents to entice them to purchase IOVATE HEALTH SCIENCES USA, INC.'s products for years, whether in the form of television advertisements, magazine advertisements, newspaper advertisements, internet advertisements or other forms of advertising and/or marketing.

6. The website which comes with a search of IOVATE HEALTH SCIENCES USA, INC. has repeated online contacts with Texas residents over the internet, and the websites contain interactive elements which allow sharing of information, all of which is designed to get Texas residents to purchase IOVATE HEALTH SCIENCES USA, INC. products.

7. IOVATE HEALTH SCIENCES USA, INC. has an active website accessible in Texas where IOVATE HEALTH SCIENCES USA, INC. engages in the direct sale of their products from the websites.

8. IOVATE HEALTH SCIENCES USA, INC. places its products into the stream of commerce by targeting Texas through dozens of approved retailers in dozens of cities and towns in Texas.

9. IOVATE HEALTH SCIENCES USA, INC. often honors its warranties to Texas consumers directly.

10. **Defendant IOVATE HEALTH SCIENCES, INC. ("Iovate")** is a foreign corporation organized and existing according to the laws of Ontario, Canada, with its principal place of business at 381 North Service Road West, Oakville, Ontario, L6M04H, but doing business in the State of Texas at all times material hereto. Service of process upon this Defendant by serving its COO, Kelly Albert, at its principal office located at 381 North Service Road West, Oakville, Ontario, L6M04H.

11. IOVATE HEALTH SCIENCES, INC. monitors its sales in Texas to consumers to increase its profits in sales to Texans.

12. IOVATE HEALTH SCIENCES, INC. has thousands if not hundreds of thousands of consumers in Texas.

13. Advertising and marketing materials are targeted to Texas residents to entice them to purchase IOVATE HEALTH SCIENCES, INC.'s products for

years, whether in the form of television advertisements, magazine advertisements, newspaper advertisements, internet advertisements or other forms of advertising and/or marketing.

14. IOVATE HEALTH SCIENCES, INC. has made and distributed dozens upon dozens of advertisements or commercials or other marketing materials touting their products, and did this to entice consumers and ultimate end-users purchase their products.

15. The website(s) for IOVATE HEALTH SCIENCES, INC. has repeated online contacts with Texas residents over the internet, and the websites contain interactive elements which allow sharing of information, all of which is designed to get Texas residents to purchase IOVATE HEALTH SCIENCES, INC. products.

16. IOVATE HEALTH SCIENCES, INC. places its products into the stream of commerce by targeting Texas through dozens of approved retailers in dozens of cities and towns in Texas.

17. **Defendant MUSCLE TECH RESEARCH AND DEVELOPMENT, INC. ("MuscleTech")** is a foreign corporation organized and existing according to the laws of Ontario, Canada, with its principal place of business at 7050 Telford Way, Unit 100, Mississauga, Ontario, Canada L5S1V7, but doing business in the State of Texas at all times material hereto. Service of process upon this Defendant by serving its CEO, Sandy Bolus, at its principal

office located at 7050 Telford Way, Unit 100, Mississauga, Ontario, Canada L5S1V7.

18. MUSCLE TECH RESEARCH AND DEVELOPMENT, INC. monitors its sales in Texas to consumers to increase its profits in sales to Texans.

19. MUSCLE TECH RESEARCH AND DEVELOPMENT, INC. has thousands if not hundreds of thousands of consumers in Texas.

20. Advertising and marketing materials are targeted to Texas residents to entice them to purchase MUSCLE TECH RESEARCH AND DEVELOPMENT, INC.'s products for years, whether in the form of television advertisements, magazine advertisements, newspaper advertisements, internet advertisements or other forms of advertising and/or marketing.

21. MUSCLE TECH RESEARCH AND DEVELOPMENT, INC. has made and distributed dozens upon dozens of advertisements or commercials or other marketing materials touting their products, and did this to entice consumers and ultimate end-users purchase their products.

22. The website(s) for MUSCLE TECH RESEARCH AND DEVELOPMENT, INC. has repeated online contacts with Texas residents over the internet, and the websites contain interactive elements which allow sharing of information, all of which is designed to get Texas residents to purchase MUSCLE TECH RESEARCH AND DEVELOPMENT, INC. products.

23. MUSCLE TECH RESEARCH AND DEVELOPMENT, INC. places its products into the stream of commerce by targeting Texas through dozens of approved retailers in dozens of cities and towns in Texas.

## II. Subject Matter Jurisdiction

24. This Court has subject-matter jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332.

25. The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

## III. Facts

26. In early August 2019, Belinda Chapman purchased and used for a very short time the product known as Hydroxycut.

27. Two days after using Hydroxycut Ms. Chapman had a seizure, which she had not had prior in her life.

28. The seizure was described as lasting 1 to 5 minutes with postictal confusion. The onset of the seizure was Ms. Chapman feeling her face tingle, her hands start tingling and then drew up (like claws), she felt her speech was gibberish, and she felt herself passing out. She woke up on the floor and didn't know what happened.

29. Ms. Chapman has noted intermittent problems with execution of speech, difficulty thinking and headache. She has about one spell a week.

33. Due to these issues Ms. Chapman is continuing to require care for seizure like activity.

34. Hydroxycut, unbeknownst to Ms. Chapman, has had an issue with causing injuries and illnesses to its users.

35. Though Defendants were aware or should have been aware of the issues with its products, Ms. Chapman was not adequately warned the product may have such devastating effects.

36. It is understood that Defendants are responsible for the design, manufacturing, testing and marketing of the product in question.

### IV.  Cause(s) of Action as to Defendants IOVATE HEALTH SCIENCES USA, INC., IOVATE HEALTH SCIENCES, INC. and MUSCLE TECH RESEARCH AND DEVELOPMENT, INC.

37. This action arises out of Defendants' misrepresentations ,and/or omissions and failure to warn of and/or otherwise disclose or adequately disclose that their Hydroxycut products were formulated, designed and manufactured using dangerous chemicals or chemical mixes recognized as toxic in several respects for years and which pose serious risks to an individual's health in the course of normal, recommended use. Despite scientific evidence of the harmful effects of Defendants' products, Defendants marketed their Products as superior, as created by and endorsed by doctors, and created a relationship with its consumers based on trust and safety.

38. While Defendants pursued their strategy of marketing their Products to consumers as safe, their marketing of these Products concealed

information material to consumers' purchasing decisions. In addition, Defendants' marketing was false and deceptive in claiming their Products to be safe and healthful. The goal of Defendants' scheme was clear - to keep consumers ignorant of the potential dangers of Hydroxycut and to reap significant financial rewards through this conduct with customers, including to the detriment of Plaintiff.

39. It was entirely foreseeable to and well-known by the Defendants that use of their products by the consuming public is *dangerous,* imposing serious health risks to Plaintiff, as more fully set forth below.

40. At all material times hereto, Defendants were in the business of formulating, designing, manufacturing, marketing, advertising, distributing and selling various dietary supplements including muscle builders and fat burners/thermogenics, sold under the trade name Hydroxycut made the basis of this lawsuit into interstate commerce and into the commerce of the State of Texas. Defendants' conduct in formulating, designing, manufacturing, marketing, advertising, distributing and/or selling the product was solely for commercial purposes.

39. When the product left the Defendants' control and was placed into the stream of commerce, the product was unreasonably dangerous, not suitable for its intended purpose, and unsafe by reason of Defendants' defective design, assembly, testing, inspection, service, marketing, distribution, and/or sale of the

product, and because the product was marketed, sold and distributed with these dangerous aspect and without adequate instructions and/or warnings regarding its defective characteristics. The product remained unchanged from the time it was originally manufactured, distributed and sold by the Defendants until it reached Plaintiff.

40. Furthermore, at the time the product was placed into the stream of commerce, Defendants intended that the product would reach members of the public, such as Plaintiff, and it was, or should have been reasonably expected and foreseeable that the product would be used by persons such as Plaintiff in the manner and application in which it was being used at the time of Plaintiff's injuries, with the expectation and belief by the Plaintiff that the product was safe for its intended use. Defendants touted the product to:

- "increase energy," "burn calories" and "control appetite";
- formulated with "clinically proven ingredients";
- "Hydroxycut® works fast";
- Hydroxycut® is America's #1 selling weight-loss supplement; Hydroxycut really does work - fast! Utilizing sophisticated Rapid-Release Caplets, Hydroxycut is doctor formulated – with clinically proven ingredients top help you lose up to 4.5 times the weight than diet and exercise alone";
- "Don't take chances -you deserve the best! Put your trust in the power of Hydroxycut® and discover for yourself why

millions of men and women all across America have used Hydroxycut. For fast weights loss, make Hydroxycut® your #1choice today!".

Defendants exuded an air of superiority in their product and promoted it as safe and effective, including promotions and advertisements focusing heavily on the claim of Hydroxycut products being "doctor formulated" and approved, with "clinically proven ingredients." Additionally, Hydroxycut product packaging and advertisements boast that Hydroxycut products are "Backed by Science" and include statements from a physician that "Hydroxycut(R) is a product that has ingredients proven to work. Thus, Defendants marketed their Hydroxycut products as superior, marketed their products as created by and endorsed by doctors, and created a relationship with their consumers based on trust and a representation of safety.

41. During all times relevant hereto, Defendants engaged in long-term advertising campaigns aimed at purchasers such as Plaintiff. Defendants subjected Plaintiff to unnecessary risks of harm and injury by using Hydroxycut products, which Defendants either knew to be unsafe or were aware of the existence of studies that concluded its products were, at the very least, potentially unsafe and unreasonably dangerous. There have been several studies concluding that Defendants products caused many injuries or disorders, yet Defendants deliberately ignored the injuries their products could cause to Plaintiff. Defendants' conduct is done with wanton disregard and

callous indifference to the safety of the Plaintiff permitting exemplary damages.

41. On or around August 2019, Plaintiff purchased and used the product in the manner for which it was designed, tested, marketed, distributed and sold, and in a manner foreseeable to Defendants for which adequate and safe instructions and warnings were required to be issued.

42. Defects in the design, assembly, instructions, manuals, testing, inspection, service, distribution, and/or sale of the product, including a lack of warnings of the dangers thereof, resulted in the Plaintiff having seizures and continued complications.

43. Plaintiff had no knowledge of this defective condition and had no reason to suspect that the product was unreasonably dangerous prior to her injuries. Defendants, however, knew, or in the exercise of ordinary care should have known, of the product's defective aspects. Additionally, Defendants failed to provide adequate warning of the dangers presented by its product as designed, tested, inspected, marketed, distributed, and/or sold.

44. **Fraud/False Advertising:** Defendants' actions, as set forth above, constitute untrue and misleading advertising. Defendants' use of various forms of media to advertise, promote and otherwise call attention to its Hydroxycut products deceptively misrepresented the products' attributes, performance, efficacy and characteristics. Defendants' Hydroxycut products could not and cannot perform as advertised and promoted, and Defendants' promotion of these

products constitutes unfair, deceptive, untrue and misleading advertising. Defendants' advertising and promotion deceived the Plaintiff. These advertisements and promotional efforts misled the Plaintiff into thinking Defendants' products were safe, healthy and generally fit for use by the Plaintiff. Defendants either knew, recklessly disregarded or reasonably should have known that such advertising/promotion was untrue and/or misleading.

As a direct and proximate result of Defendants' wrongful conduct, Plaintiff is entitled to damages and restitution.

Defendants' misrepresentations and omissions were made with the intent to induce Plaintiff to purchase Defendants' Hydroxycut products. As a proximate result of the fraudulent concealment of Defendants, Plaintiff was induced to purchase and use Defendants' Hydroxycut products.

At the time of these concealments, Plaintiff was ignorant of the existence of the facts which Defendant concealed, including the fact that Defendants' Hydroxycut products were dangerous. If Plaintiff had been aware of the existence of the facts concealed by Defendants, she would not have purchased Defendants' Hydroxycut products.

The concealment of these facts was likely to mislead and did mislead Plaintiff into believing she was purchasing safe products, when in fact she was purchasing products which were dangerous.

By reason of the foregoing, Plaintiff has suffered damages.

As a result of the foregoing wrongful acts, and because Plaintiff is informed and believes and thereon alleges that Defendants' acts and/or omissions were actuated by malice and were accompanied by a wonton and willful disregard of persons who would foreseeably be harmed by those acts and/or omissions, Plaintiff is not only entitled to damages, but are also entitled to exemplary damages in a sum not presently known, but sufficient for the sake of example and by way of deterring Defendants and others from further such actions.

45. **Breach of Express Warranties:** Defendants made numerous representations, descriptions and warranties that its Hydroxycut products were safe for use by human consumption. Plaintiff is informed and believes and thereon alleges that these representations were untrue and that Defendants either knew, recklessly disregarded or reasonably should have known, that their Hydroxycut products were dangerous when used by the Plaintiff, as recommended by Defendants.

As a direct and proximate result of Defendants' false representations and warranties, Plaintiff has suffered damages by purchasing and using Defendants' Hydroxycut products.

Defendants' actions, as set forth above, constitute breach of express warranty. As a proximate result of Defendant's actions, Plaintiff is entitled to damages and restitution as herein set forth.

46. **Breach of Implied Warranties:** Defendants impliedly warranted that its Hydroxycut products were safe for use by the consuming public. Defendants either knew, recklessly disregarded or reasonably should have known that its Hydroxycut products are dangerous when consumed as directed.

As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages by Purchasing and using Defendant's Hydroxycut products. Defendants' actions, as set forth above, constitute breach of implied warranties.

As a proximate result of Defendants' actions, Plaintiff is entitled to damages and restitution.

47. By reason of the foregoing, the product was dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases it, and Defendants are strictly liable for the damages sustained by Plaintiff pursuant to the *Restatement (Second) of Torts* Sections 402A and 402B.

47. The injuries and damages complained of herein occurred because the Product in question was not reasonably fit for unintended, but clearly foreseeable use.

54. The foregoing acts and/or omissions of Defendants were a producing and/or proximate cause of the Plaintiff's damages.

55. The foregoing acts and/or omissions of Defendants were a producing and/or proximate cause of Plaintiff Clara Howell's serious, debilitating and permanent injuries.

### V. Damages to Plaintiff

56. As a result of the acts and/or omissions of Defendants, Belinda Chapman has suffered physical pain and mental anguish in the past, physical pain and mental anguish that in the future, disfigurement sustained in the past and future, and physical impairment in the past and future.

57. As a result of the acts and/or omissions of Defendants, Plaintiff Belinda Chapman has become obligated to pay necessary and reasonable medical expenses in the past and will, in all likelihood, into the future for her injuries realized in this incident.

58. As a result of the injuries to Plaintiff, Plaintiff has sustained damages and is entitled to recover all fair and just compensatory damages allowed by law, including past and future medical expenses, pain and suffering, past and future lost wages and lost earning capacity, impairment, pain and suffering and mental anguish, and other damages.

59. The above and foregoing acts and/or omissions of Defendants, resulting in the injuries to Plaintiff Belinda Chapman, have caused actual damages to Plaintiff in an amount in excess of the minimum jurisdictional limits of this Court.

## VI. JURY DEMAND

59. Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and respectfully demands, in accordance with Federal Rule of Civil procedure 38, a trial by jury on all issues.

## VII.  CONCLUSION AND PRAYER

60. For the reasons presented herein, Plaintiff prays that the Defendants be cited to appear and answer, and that upon a final trial of this cause, Plaintiff recovers judgment against Defendant for:

    a.    actual damages;
    b.    economic and non-economic damages;
    c.    prejudgment and post-judgment interest beginning August 2019.
    d.    costs of suit; and
    e.    all other relief, general and special, to which Plaintiff is entitled to at law and/or equity, and/or which the Court deems proper.

Respectfully submitted,

 /s/ Stewart D. Matthews
Stewart D. Matthews
State Bar No. 24039042
Attorney@accidentlawyer.legal
1905 W. Ennis Avenue
Suite 506
Ennis, Texas  75119
(972) 398-6666 – Phone
(214) 206-9991 – Fax

**Attorney for Plaintiff**